Case 5:11-cv-00230-C-BG   Document 20   Filed 11/16/12   Page 1 of 15   PageID 776

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2012 NOV 16  AM 11:57

DEPUTY CLERK _____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| SHAWNDA S. MASEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 5:11-CV-00230-BG |
| | ) ECF |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

### Statement of the Case

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Plaintiff Shawnda S. Masey seeks judicial review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income. The United States District Judge transferred this case to the United States Magistrate Judge for further proceedings. Pursuant to the Order of transfer, the undersigned now files this Report and Recommendation.

Masey and a vocational expert testified at a hearing before an administrative law judge (ALJ) on October 23, 2008. Masey was represented by counsel at the hearing. The ALJ determined on February 17, 2009, that Masey was not disabled. Masey administratively appealed that decision, and the Appeals Council remanded the case to the ALJ for further proceedings on April 7, 2010. One year later, Masey and a vocational expert testified at a hearing before a second ALJ. Counsel also represented Masey at that hearing. On May 24, 2011, the second ALJ found that Masey was not disabled. Masey appealed, but this time the Appeals Council denied review. Therefore, the second

1

ALJ's decision is the Commissioner's final decision and properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Standard of Review

A plaintiff is disabled and may be entitled to disability insurance benefits and supplemental security income if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (2012).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's residual functional capacity (RFC), defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), 416.920(a)(4), 416.945(a)(1).

2

The court must affirm the Commissioner's decision unless it finds that (1) the ALJ applied an incorrect legal standard or (2) the ALJ's determination is not supported by substantial evidence. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

## Factual Background

Masey reported that she had a stroke in 2001 and another in 2002. (Tr. 42, 47, 64–65, 329, 355.) She reported that she previously worked as an apartment manager at her apartment complex, where she assisted with "fixing up" apartments for rental, collected rent, answered phones, wrote rental property agreements, and showed apartments and rental houses. (Tr. 247.) She claims that she worked there full-time from 2001 until December 28, 2006, when she claims she became disabled at age 36 due to seizures, diabetes, high blood pressure, panic attacks, depression, and residual effects from her strokes. (Tr. 224, 246–47.) Masey claims that after she became disabled, she reduced her work schedule at the apartment complex to part-time and was compensated with credits toward her rent and utility bills. (Tr. 286, 290.) She reported that her rent was $390 per month. (Tr. 286, 290.)

**Discussion**

I. Substantial evidence does not support the second ALJ's conclusion that Masey engaged in substantial gainful activity in 2008 and 2009.

The second ALJ determined that Masey "was not disabled at any time through December 31, 2009, due to her engagement in substantial gainful activity." (Tr. 21.) Masey does not dispute this finding with respect to 2006 and 2007. However, she argues that substantial evidence does not support the ALJ's conclusion that she engaged in substantial gainful activity in 2008 and 2009. (Pl.'s Br. 21–25.) This argument has merit and requires remand.

"Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *see also* 20 C.F.R. §§ 404.1572, 416.972 (defining "substantial gainful activity"). Pursuant to the regulations governing Social Security claims, a claimant's average monthly earnings trigger presumptions regarding whether she engaged in substantial gainful activity; if a claimant's average monthly earnings are equal to or less than a specified amount in a given year, the claimant's earnings create a presumption that she did not engage in substantial gainful activity. *See* 20 C.F.R. §§ 404.1574(b)(3)(i), 416.974 (b)(3)(i) ("If your average monthly earnings are equal to or less than the amount(s) determined under paragraph (b)(2) of this section for the year(s) in which you work, we will generally consider that the earnings from your work as an employee . . . will show that you have not engaged in substantial gainful activity."); 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2) (specifying amounts that trigger presumptions).

The average monthly earnings that trigger presumptions regarding substantial gainful activity are $940 for 2008 and $980 for 2009. Substantial Gainful Activity, The United States Social Security Administration, http://www.ssa.gov/OACT/COLA/sga.html (last modified Oct. 16, 2012) (on file with Fifth Circuit Library). The Social Security Administration's records show that Masey's earnings averaged $860.41 per month in 2008 and $878.25 per month in 2009. (Tr. 239, 242.) These records are "evidence for the purpose of proceedings before the Commissioner of Social Security or any court of the amounts of wages paid to, and self-employment income derived by, an individual[.]" 42 U.S.C. § 405(c)(3). The amounts shown create a presumption that Masey did not engage in substantial gainful activity in 2008 and 2009.

Nevertheless, the second ALJ found that Masey engaged in substantial gainful activity in 2008 and 2009 and based his determination of non-disability for those years solely on that finding. (Tr. 21.) He explained his reasoning as follows: "While her paid earnings for those two years do not rise to the level of substantial gainful activity, adding the value of her utilities and rental would create a presumption of substantial gainful activity." Id. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." Newton, 209 F.3d at 455.

In Grant v. Shalala, No. 93-8324, 1994 WL 487172 (5th Cir. Aug. 15, 1994), the Court of Appeals for the Fifth Circuit applied the average monthly earnings presumptions to decide whether a claimant's part-time work as a school crossing guard qualified as substantial gainful activity. Id. at *4. In that case, the only evidence of the claimant's salary as a crossing guard was the claimant's statements in a vocational report she submitted in connection with her application for benefits. Id. Extrapolating from the amounts listed on the report, the court found that the claimant's statements

indicated that she earned "less than the earning level required by the regulations." *Id.* The court concluded, "Because there is insufficient evidence that [the claimant's] job as a school crossing guard qualifies as a substantial gainful activity, and because what evidence exists tends to indicate that it does not, we may not affirm the denial of benefits on this ground." *Id.*

In contrast, in *Rutherford v. Shalala*, No. 94-60453, 1994 WL 725165 (5th Cir. Dec. 22, 1994), the record contained conflicting evidence regarding the claimant's earnings as an exterminator. *Id.* at *2. At the hearing before the ALJ, the claimant testified that he earned an amount less than the threshold amount stipulated in the regulations. *Id.* at *2 n.1. However in his application for benefits, the claimant listed earnings that exceeded the threshold amount. *Id.* Furthermore, both the Social Security Administration's records and records provided by the claimant's employer differed from the amounts reported by the claimant himself. *Id.* The court affirmed the ALJ's finding that the exterminator job constituted substantial gainful activity, concluding that the ALJ "acted well within his discretion in resolving the conflicting evidence against" the claimant. *Id.*

Aside from the Social Security Administration's records, Masey's own statements constitute the only evidence of record that addresses her 2008 and 2009 earnings. On a form that Masey submitted in connection with her application for benefits dated April 30, 2008, Masey wrote, "I work here [at my apartment complex] for my rent of 390 [dollars] and any utilities, lights, water, gas. I receive no money." (Tr. 290.) At the hearing before the first ALJ in October 2008, Masey testified that in exchange for her work at her apartment complex she got "to live there without paying rent." (Tr. 72.) She also stated that she was not paid any money for her work and that her apartment would rent for $390 per month. *Id.* At the hearing before the second ALJ, Masey again testified that she

received credit on her rent and utilities for her work at the apartment complex. (Tr. 40.) Later, the following exchange took place:

> ALJ: I need to clarify. Just going back and looking at your earnings record here, can you tell me what you were doing in '07, '08, and '09? I see posted earnings for the year 2007 of over $11,000, and the year '08 and '09, both over $10,000. What were you doing to earn that income?
>
> Masey: That was what I was doing at the apartments. When I went to the lady – to H&R Block who is always doing my taxes, I told her about the change and what I was doing, and she said I still had to report it or I could get in trouble for tax fraud. So the little bit that I was doing, I still reported to her so we could turn it into the IRS.

(Tr. 55–56.)

Unlike the claimant in *Rutherford*, Masey has never reported earnings in 2008 or 2009 that exceed the threshold amounts established in the regulations. *Rutherford*, 1994 WL 725165 at *2 n.1. As in *Grant*, the evidence that does exist in this case – including the Social Security Administration's own records – indicates that Masey's work at her apartment complex does not constitute substantial gainful activity using the regulations' earnings presumptions. *Grant*, 1994 WL 487172, at *4. Accordingly, like the court in *Grant*, "we may not affirm the denial of benefits on this ground." *Id.*

II. <u>Substantial evidence supports the second ALJ's determination that Masey's past relevant work included the job of apartment manager.</u>

For the period following January 1, 2010, the second ALJ found that Masey was not disabled because she "retained the functional capacity to perform her past relevant work as an apartment manager[.]" (Tr. 27.) Masey argues that the second ALJ did not comply with Social Security Ruling

7

82-62 in reaching this determination. (Pl.'s Br. 27–31.) That ruling requires an ALJ to make a specific finding "as to the physical and mental demands" of a claimant's past job if the ALJ finds that the claimant has the capacity to perform that job. SSR 82-62, 1982 WL 31386, at *4 (1982).

In general, "where the rights of individuals are affected, an agency must follow its own procedure, even where the internal procedures are more rigorous than otherwise would be required." *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). However, the Court of Appeals for the Fifth Circuit requires "a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision." *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). Thus, an ALJ "is not always required to do an exhaustive point-by-point discussion" to comply with agency rules. *Audler*, 501 F.3d at 448. Procedural perfection is not required "as long as 'the substantial rights of a party have not been affected.'" *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

Masey appears to argue that she was prejudiced by the second ALJ's allegedly faulty explanation at step 4 because "[t]here is no evidence in the record that supports a conclusion that Ms. Masey performed the job of an apartment manager" as it is described in the Dictionary of Occupational Titles (DOT). (Pl.'s Br. 29–30.) If true, this error could—but may not necessarily—prejudice Masey: although a job must have been performed by a claimant in the fifteen years preceding adjudication to qualify as past relevant work, an ALJ's determination of whether a claimant can perform past work may be based on descriptions of "past work as actually performed or as generally performed in the national economy." *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1) (defining past relevant work as work that a claimant performed "within the past 15 years, that was substantial gainful activity, and that lasted

long enough for [the claimant] to learn to do it").

The DOT defines the job of apartment manager as follows:

> Manages apartment house complex or development for owners or property management firm: Shows prospective tenants apartments and explains occupancy terms. Informs prospective tenants of availability of nearby schools, shopping malls, recreational facilities, and public transportation. Rents or leases apartments, collects security deposit as required, and completes lease form outlining conditions and terms of occupancy when required. Collects rents due and issues receipts. Investigates tenant complaints concerning malfunctions of utilities or furnished household appliances or goods, and inspects vacated apartments to determine need for repairs or maintenance. Directs and coordinates activities of maintenance staff engaged in repairing plumbing or electrical malfunctions, painting apartments or buildings, and performing landscaping or gardening work, or arranges for outside personnel to perform repairs. Resolves tenant complaints concerning other tenants or visitors. May arrange for other services, such as trash collection, extermination, or carpet cleaning. May clean public areas of building and make minor repairs to equipment or appliances.

Dictionary of Occupational Titles at 138 (4th ed. 1991) (Listing 186.167-018). An ALJ may rely on the DOT to determine the requirements of a claimant's past work "as generally performed in the economy." SSR 82-62, 1982 WL 31386, at *3.

Substantial evidence supports the second ALJ's finding that Masey performed the job of apartment manager in the fifteen years prior to adjudication of her claim. On a form submitted in connection with her application for benefits, Masey reported that she worked as a manager of apartments and rental houses from 2001 through 2006 and that her duties included "fixing up" apartment and houses for rent, collecting rent, answering telephones, writing property agreements, and showing apartments and houses. (Tr. 247.) According to a physician who examined Masey in connection with her application for benefits, Masey stated that she worked part-time as an apartment

manager in November 2007. (Tr. 355.) At the 2011 hearing, Masey testified that she "worked full-time [at her apartment complex] since 2001" and began working part-time sometime in December 2006. (Tr. 38, 40–41, 47–48.) Finally, at the 2008 hearing a vocational expert testified that Masey's past work history included the job of apartment manager. (Tr. 75.) An ALJ may rely on the testimony of a vocational expert to evaluate "the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Vocational expert testimony may also be used to evaluate "the accuracy of the claimant's description of [her] past work." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

In support of her argument, Masey cites her 2008 hearing testimony in which she stated that she did not show apartments, talk to potential renters, or do maintenance work. (Pl.'s Br. 30; Tr. 73, 75.) At that hearing, she also indicated that she sometimes answered phones but was "basically just a warm body in the office" to keep people from stealing chairs. (Tr. 73.) The second ALJ found that Masey's assertions regarding her lack of job duties at her apartment complex were not credible. (Tr. 27.) An ALJ's "assessment of a claimant's credibility is accorded great deference" if supported by substantial evidence. *Newton*, 209 F.3d at 459; *see also Villa*, 895 F.2d at 1024 (holding that an ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence").

The substantial evidence that supports the second ALJ's finding that Masey worked as an apartment manager also supports his credibility finding in this regard. In addition, at the 2011 hearing Masey testified that she helped complete paperwork for her apartment complex, in conflict with her 2008 assertion that she was "basically just a warm body in the office[.]" (Tr. 39, 73.) On

the previously described form that Masey submitted in connection with her application, she stated that she supervised ten other employees, in conflict with 2008 testimony that she did not "give anybody orders or anything." (Tr. 71, 247–48.)

Masey has the burden of "showing that she could not do her past relevant work." *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994). She also "has the burden to show that prejudice resulted from an error." *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012). With regard to the period following January 1, 2010, she has not met either burden. *See id.* (affirming Commissioner's decision where only prejudice alleged by claimant was that additional evidence "might tip the balance in plaintiff's favor").

III. Substantial evidence supports the second ALJ's determination that Masey was not fully compliant with prescribed treatment for her seizure disorder.

An ALJ may rely on a claimant's "lack of treatment as an indication of nondisability." *Villa*, 895 F.2d at 1024. For the period following January 1, 2010, the second ALJ found that Masey was not disabled in part because she did not take her seizure medication on a regular basis and had "not adhered to prescribed treatment for her seizure disorder." (Tr. 23, 25.) He also concluded that Masey's seizure medications were "relatively effective in controlling her symptoms when taken as prescribed." (Tr. 26.) Substantial evidence supports these conclusions.

According to an emergency room physician who treated Masey for reported seizure activity in January 2007, Masey stated that she did not take her medication on a regular basis. (Tr. 485.) In May and June of that year, Masey's blood work revealed subtherapeutic phenobarbital levels at emergency room visits following reported seizure activity. (Tr. 467, 473.) At an appointment with a psychologist in September 2008, Masey reported that her last seizure had occurred six months

11

prior. (Tr. 521.) At her hearing the following month, Masey testified that phenobarbital and neurontin reduced the frequency of her seizures. (Tr. 66.) In January, April, and June of 2010, Masey's blood work again revealed low phenobarbital levels when she went to the emergency room following reported seizure activity. (Tr. 546, 555, 566.) At the January visit, the emergency room physician noted her seizures to be infrequent. (Tr. 564.) At the June visit, the physician noted Masey's "medication non-compliance." (Tr. 546.) In September 2010, Masey went to the emergency room due to seizure activity after reportedly running out of her medication, and the physician again noted that her seizures were infrequent. (Tr. 539.) That same month, a physician who examined Masey in connection with her application for benefits noted that Masey was "taking medication that seems to be controlling her seizures very well." (Tr. 527.)

In view of the foregoing substantial evidence, the second ALJ's findings regarding Masey's compliance with her seizure medication regimen must be affirmed. *See Newton*, 209 F.3d at 452 ("If the Commissioner's findings are supported by substantial evidence, they must be affirmed."). In her brief, Masey cites evidence in the record that, she asserts, show her compliance with the treatment prescribed for her seizures. (Pl.'s Br. 26–27.) However, when substantial evidence supports an ALJ's conclusions, a court "may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Masey argues that Social Security Ruling 82-59 required the second ALJ to advise her of the effect that failure to follow prescribed treatment could have on her eligibility for benefits. (Pl.'s Br. 26–27.) However, that ruling "does not restrict the use of evidence of noncompliance, it merely delineates the reasons that the Social Security Administration may deny benefits to an otherwise disabled person because they fail to comply with their doctor's prescribed treatment." *Holley v.*

*Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). Accordingly, it applies only when an ALJ finds that a claimant was disabled and that compliance with treatment would restore her ability to work. *See id.* (holding that SSR 82-59 did not apply because the ALJ "never determined that [the claimant] was disabled and that compliance would restore [his] ability to work"); *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995) (holding that the claimant "had no right to enjoy the protections of SSR 82–59 because the Secretary did not premise the denial of her benefits solely on [the] failure to follow prescribed treatment"). The second ALJ made no such finding in this case.

IV.  The second ALJ considered the combined effect of Masey's impairments.

Finally, Masey argues that the second ALJ did not consider the combined effect of Masey's impairments. (Pl.'s Br. 31–33.) It is true that an ALJ "must analyze both the 'disabling effect of each of the claimant's ailments' and the 'combined effect of all of these impairments.'" *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (quoting *Dellolio v. Heckler*, 705 F.2d 123, 128 (5th Cir.1983)).

In support of her argument, Masey lists numerous impairments referenced in her medical records that she claims the second ALJ did not consider in combination. (Pl.'s Br. 31–33.) However, the mere existence of impairments does not establish disability; a claimant must show that the impairments or combination thereof meets the duration requirement and prevents her from engaging in substantial gainful activity. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (defining "disability"); 20 C.F.R. §§ 404.1509, 416.909 (explaining the duration requirement). Masey has not done so.

In addition, the second ALJ explicitly recognized that he had to consider Masey's combination of impairments in his review of applicable law. (Tr. 18.) He also recognized that he

was required to consider all of Masey's impairments, "including impairments that are not severe" when determining her RFC. (Tr. 19.) He expressly found that Masey did "not have an impairment or combination of impairments that meets or medically equals" one of the impairments listed in the regulations at step 3. (Tr. 22.) He also stated that he considered "the entire record" and "all symptoms." (Tr. 19, 24.) Accordingly, Masey's argument does not require remand. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (rejecting claimant's conclusory argument that ALJ failed to consider the combined effects of his impairments because the ALJ expressly referenced the claimant's combination of impairments at step 3, stated that he considered "the evidence as a whole," and used other similar language in his opinion).

## Conclusion

For the foregoing reasons, this court recommends that the United States District Court **REVERSE** the Commissioner's decision as to 2008 and 2009 and **REMAND** this case for administrative proceedings consistent with this opinion.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to timely file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge

14

that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

Dated:   November 16, 2012.

NANCY M. KOENIG
United States Magistrate Judge